**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

UNITED STATES OF AMERICA,

> *Plaintiff*,

v.

NEXSTAR BROADCASTING GROUP, INC.,
and MEDIA GENERAL, INC.,

> *Defendants*.

---

## PROPOSED FINAL JUDGMENT

WHEREAS, Plaintiff, the United States of America, filed its Complaint on September 2, 2016, and Defendant Nexstar Broadcasting Group, Inc. ("Nexstar") and Defendant Media General, Inc. ("Media General"), by their respective attorneys, have consented to the entry of this Final Judgment without trial or adjudication of any issue of fact or law, and without this Final Judgment constituting any evidence against or admission by any party regarding any issue of fact or law;

AND WHEREAS, Defendants agree to be bound by the provisions of this Final Judgment pending its approval by the Court;

AND WHEREAS, the essence of this Final Judgment is the prompt and certain divestiture of certain rights or assets by the Defendants to assure that competition is not substantially lessened;

AND WHEREAS, the United States requires Defendants to make certain divestitures for the purpose of remedying the loss of competition alleged in the Complaint;

AND WHEREAS, Defendants have represented to the United States that the divestitures required below can and will be made and that Defendants will later raise no claim of hardship or difficulty as grounds for asking the Court to modify any of the divestiture provisions contained below;

NOW THEREFORE, before any testimony is taken, without trial or adjudication of any issue of fact or law, and upon consent of the parties, it is ORDERED, ADJUDGED, AND DECREED:

## I. **JURISDICTION**

This Court has jurisdiction over the subject matter and each of the parties to this action. The Complaint states a claim upon which relief may be granted against Defendants under Section 7 of the Clayton Act, as amended, 15 U.S.C. § 18.

## II. **DEFINITIONS**

As used in this Final Judgment:

A.      "Nexstar" means Defendant Nexstar Broadcasting Group, Inc., a Delaware corporation headquartered in Irving, Texas, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

B.      "Media General" means Defendant Media General, Inc., a Virginia corporation headquartered in Richmond, Virginia, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

C.      "Gray" means Gray Television, Inc., a Georgia corporation headquartered in Atlanta, Georgia, its successor and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

D.      "Graham" means Graham Holdings Company, a Delaware corporation headquartered in Arlington, Virginia, its successor and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

E.      "Bayou City" means Bayou City Broadcasting Lafayette, Inc., a privately held company headquartered in Houston, Texas, its successor and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, including, but not limited to, Bayou City Broadcasting, LLC, and their directors, officers, managers, agents, and employees.

F.      "USA TV" means USA Television MidAmerica Holdings, LLC, a privately held company headquartered in Atlanta, Georgia, its successor and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, including, but not limited to, MSouth Equity Partners, Heartland Media, LLC, and USA Television Holdings, LLC, and their directors, officers, managers, agents, and employees.

G.      "Acquirer" means Gray, Graham, Bayou City, USA TV, or another entity to which Defendants divest any of the Divestiture Assets.

H.      "DMA" means Designated Market Area as defined by A.C. Nielsen Company based upon viewing patterns and used by the *Investing in Television BIA Market Report 2016* (1st edition).  DMAs are ranked according to the number of households therein and are used by broadcasters, advertisers, and advertising agencies to aid in evaluating television audience size and composition.

I.      "WBAY-TV" means the ABC-affiliated broadcast television station located in the Green Bay-Appleton, Wisconsin DMA owned by Defendant Media General.

J.      "WSLS-TV" means the NBC-affiliated broadcast television station located in the Roanoke-Lynchburg, Virginia DMA owned by Defendant Media General.

K.      "KADN-TV" means the FOX-affiliated broadcast television station located in the Lafayette, Louisiana DMA owned by Defendant Nexstar.

L.      "KLAF-LD" means the NBC-affiliated broadcast television station located in the Lafayette, Louisiana DMA owned by Defendant Nexstar.

M.      "WTHI-TV" means the CBS-affiliated broadcast television station located in the Terre Haute, Indiana DMA owned by Defendant Media General.

N.      "WFFT-TV" means the FOX-affiliated broadcast television station located in the Ft. Wayne, Indiana DMA owned by Defendant Nexstar.

O.      "KWQC-TV" means the NBC-affiliated broadcast television station located in the Davenport, Iowa/Rock Island-Moline, Illinois DMA owned by Defendant Media General.

P.      "Divestiture Assets" means the WBAY-TV, WSLS-TV, KADN-TV, KLAF-LD, WTHI-TV, WFFT-TV, and KWQC-TV broadcast television stations and all assets, tangible or intangible, principally devoted to or necessary for the operation of the stations as viable, ongoing commercial broadcast television stations, including, but not limited to, all real property (owned or leased), all broadcast equipment, office equipment, office furniture, fixtures, materials, supplies, and other tangible property; all licenses, permits, authorizations, and applications therefore issued by the Federal Communications Commission ("FCC") and other government agencies related to the stations; all contracts (including programming contracts and rights), agreements, network affiliation agreements, leases, and commitments and understandings of

Defendants; all trademarks, service marks, trade names, copyrights, patents, slogans,

programming materials, and promotional materials relating to the stations; all customer lists,

contracts, accounts, and credit records; and all logs and other records maintained by Defendants

in connection with the stations.

### III. <u>APPLICABILITY</u>

A.      This Final Judgment applies to Defendants, and all other persons in active concert

or participation with any of them who receive actual notice of this Final Judgment by personal

service or otherwise.

B.      If, prior to complying with Sections IV and V of this Final Judgment, Defendants

sell or otherwise dispose of all or substantially all of their assets or of lesser business units that

include the Divestiture Assets, they shall require the purchaser to be bound by the provisions of

this Final Judgment.  Defendants need not obtain such an agreement from the Acquirer(s) of the

assets divested pursuant to this Final Judgment.

### IV. <u>DIVESTITURES</u>

A.      Defendants are ordered and directed, within ninety (90) calendar days after the

filing of the Complaint in this matter, or five (5) calendar days after notice of entry of this Final

Judgment by the Court, whichever is later, to divest the Divestiture Assets in a manner consistent

with this Final Judgment to one or more Acquirers acceptable to the United States, in its sole

discretion.  The United States, in its sole discretion, may agree to one or more extensions of this

time period not to exceed ninety (90) calendar days in total, and shall notify the Court in such

circumstances.  With respect to divestiture of the Divestiture Assets by Defendants or a trustee

appointed pursuant to Section V of this Final Judgment, if applications have been filed with the

FCC within the period permitted for divestiture seeking approval to assign or transfer licenses to

the Acquirers of the Divestiture Assets, but an order or other dispositive action by the FCC on

such applications has not been issued before the end of the period permitted for divestiture, the

period shall be extended with respect to divestiture of the Divestiture Assets for which no FCC

order has issued until five (5) days after such order is issued.  Defendants agree to use their best

efforts to divest the Divestiture Assets and to obtain all necessary FCC approvals as

expeditiously as possible.  This Final Judgment does not limit the FCC's exercise of its

regulatory powers and process with respect to the Divestiture Assets.  Authorization by the FCC

to conduct the divestiture of a Divestiture Asset in a particular manner will not modify any of the

requirements of this Final Judgment.

      B.      In the event that Defendants are attempting to divest assets related to WBAY-TV

or KWQC-TV to an Acquirer other than Gray, or assets related to WSLS-TV to an Acquirer

other than Graham, or assets related to KADN-TV or KLAF-LD to an Acquirer other than Bayou

City, or assets related to WTHI-TV or WFFT-TV to an Acquirer other than USA TV:

      (1) Defendants, in accomplishing the divestitures ordered by this Final Judgment,
promptly shall make known, by usual and customary means, the availability
of the Divestiture Assets to be divested;

      (2) Defendants shall inform any person making an inquiry regarding a possible
purchase of the relevant Divestiture Assets that they are being divested
pursuant to this Final Judgment and provide that person with a copy of this
Final Judgment;

      (3) Defendants shall offer to furnish to all prospective Acquirers, subject to
customary confidentiality assurances, all information and documents relating
to the relevant Divestiture Assets customarily provided in a due diligence

process except such information or documents subject to the attorney-client privilege or work-product doctrine; and

(4) Defendants shall make available such information to the United States at the same time that such information is made available to any other person.

C.     Defendants shall provide the Acquirer(s) and the United States information relating to the personnel involved in the operation and management of the relevant Divestiture Assets to enable the Acquirer(s) to make offers of employment.  Defendants shall not interfere with any negotiations by the Acquirer(s) to employ or contract with any employee of any Defendant whose primary responsibility relates to the operation or management of the relevant Divestiture Assets.

D.     Defendants shall permit the prospective Acquirer(s) of the Divestiture Assets to have reasonable access to personnel and to make inspections of the physical facilities of the relevant stations; access to any and all environmental, zoning, and other permit documents and information; and access to any and all financial, operational, or other documents and information customarily provided as part of a due diligence process.

E.     Defendants shall warrant to the Acquirers that each Divestiture Asset will be operational on the date of sale.

F.     Defendants shall not take any action that will impede in any way the permitting, operation, or divestiture of the Divestiture Assets.

G.     At the option of the Acquirer(s), Defendants shall enter into a transition services agreement with the Acquirer(s) for a period of up to six (6) months to facilitate the continuous operations of the relevant Divestiture Assets until the Acquirer(s) can provide such capabilities independently.  The terms and conditions of any contractual arrangement intended to satisfy this

provision must be reasonably related to market conditions and shall be subject to the approval of the United States, in its sole discretion.  Additionally, the United States in its sole discretion may approve one or more extensions of this agreement for a total of up to an additional six (6) months.

H.      Defendants shall warrant to the Acquirer(s) that there are no material defects in the environmental, zoning, or other permits pertaining to the operation of each asset, and that, following the sale of the Divestiture Assets, Defendants will not undertake, directly or indirectly, any challenges to the environmental, zoning, or other permits relating to the operation of the Divestiture Assets.

I.      Unless the United States otherwise consents in writing, the divestitures pursuant to Section IV, or by trustee appointed pursuant to Section V of this Final Judgment, shall include the entire Divestiture Assets and be accomplished in such a way as to satisfy the United States, in its sole discretion, that the Divestiture Assets can and will be used by the Acquirers as part of a viable, ongoing commercial television broadcasting business.  Divestiture of the Divestiture Assets may be made to one or more Acquirers, provided that in each instance it is demonstrated to the sole satisfaction of the United States that the Divestiture Assets will remain viable, and the divestiture of such assets will achieve the purposes of this Final Judgment and remedy the competitive harm alleged in the Complaint.  The divestitures, whether pursuant to Section IV or Section V of this Final Judgment:

> (1) shall be made to Acquirer(s) that, in the United States' sole judgment, have the intent and capability (including the necessary managerial, operational, technical, and financial capability) of competing effectively in the commercial television broadcasting business; and

(2) shall be accomplished so as to satisfy the United States, in its sole discretion, that none of the terms of any agreement between the Acquirer(s) and Defendants gives Defendants the ability unreasonably to raise the costs of the Acquirer(s), to lower the efficiency of the Acquirer(s), or otherwise to interfere in the ability of the Acquirer(s) to compete effectively.

## V. <u>APPOINTMENT OF TRUSTEE</u>

A.      If Defendants have not divested the Divestiture Assets within the time period specified in Section IV(A), Defendants shall notify the United States of that fact in writing, specifically identifying the Divestiture Assets that have not been divested.  Upon application of the United States, the Court shall appoint a trustee selected by the United States and approved by the Court to effect the divestiture of the Divestiture Assets that have not yet been divested.

B.      After the appointment of a trustee becomes effective, only the trustee shall have the right to sell the relevant Divestiture Assets.  The trustee shall have the power and authority to accomplish the divestiture to an Acquirer acceptable to the United States at such price and on such terms as are then obtainable upon reasonable effort by the trustee, subject to the provisions of Sections IV, V, and VI of this Final Judgment, and shall have such other powers as this Court deems appropriate.  Subject to Section V(D) of this Final Judgment, the trustee may hire at the cost and expense of Defendants any investment bankers, attorneys, or other agents, who shall be solely accountable to the trustee, reasonably necessary in the trustee's judgment to assist in the divestiture.  Any such investment bankers, attorneys, or other agents shall serve on such terms and conditions as the United States approves, including confidentiality requirements and conflict of interest certifications.

C.    Defendants shall not object to a sale by the trustee on any ground other than the trustee's malfeasance.  Any such objections by Defendants must be conveyed in writing to the United States and the trustee within ten (10) calendar days after the trustee has provided the notice required under Section VI.

D.    The trustee shall serve at the cost and expense of Defendants pursuant to a written agreement, on such terms and conditions as the United States approves, including confidentiality requirements and conflict of interest certifications.  The trustee shall account for all monies derived from the sale of the relevant Divestiture Assets and all costs and expenses so incurred.  After approval by the Court of the trustee's accounting, including fees for its services yet unpaid and those of any professionals and agents retained by the trustee, all remaining money shall be paid to Defendants and the trust shall then be terminated.  The compensation of the trustee and any professionals and agents retained by the trustee shall be reasonable in light of the value of the Divestiture Assets subject to sale by the trustee and based on a fee arrangement providing the trustee with an incentive based on the price and terms of the divestiture and the speed with which it is accomplished, but timeliness is paramount.  If the trustee and Defendants are unable to reach agreement on the trustee's or any agents' or consultants' compensation or other terms and conditions of engagement within 14 calendar days of appointment of the trustee, the United States may, in its sole discretion, take appropriate action, including making a recommendation to the Court.  The trustee shall, within three (3) business days of hiring any other professionals or agents, provide written notice of such hiring and the rate of compensation to Defendants and the United States.

E.    Defendants shall use their best efforts to assist the trustee in accomplishing the required divestiture.  The trustee and any consultants, accountants, attorneys, and other agents

retained by the trustee shall have full and complete access to the personnel, books, records, and facilities of the business to be divested, and Defendants shall develop financial and other information relevant to such business as the trustee may reasonably request, subject to reasonable protection for trade secret or other confidential research, development, or commercial information or any applicable privileges.  Defendants shall take no action to interfere with or to impede the trustee's accomplishment of the divestiture.

F.     After its appointment, the trustee shall file monthly reports with the United States and, as appropriate, the Court setting forth the trustee's efforts to accomplish the relevant divestitures ordered under this Final Judgment.  To the extent such reports contain information that the trustee deems confidential, such report shall not be filed in the public docket of the Court.  Such report shall include the name, address, and telephone number of each person who, during the preceding month, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in the Divestiture Assets, and shall describe in detail each contact with any such person.  The trustee shall maintain full records of all efforts made to divest the relevant Divestiture Assets.

G.     If the trustee has not accomplished the divestitures ordered under this Final Judgment within six (6) months after its appointment, the trustee shall promptly file with the Court a report setting forth (1) the trustee's efforts to accomplish the required divestiture, (2) the reasons, in the trustee's judgment, why the required divestiture has not been accomplished, and (3) the trustee's recommendations.  To the extent such report contains information that the trustee deems confidential, such report shall not be filed in the public docket of the Court.  The trustee shall at the same time furnish such report to the United States which shall have the right to make additional recommendations consistent with the purpose of the trust.  The Court

thereafter shall enter such orders as it shall deem appropriate to carry out the purpose of the Final Judgment, which may, if necessary, include extending the trust and the term of the trustee's appointment by a period requested by the United States.

H.     If the United States determines that the trustee has ceased to act or failed to act diligently or in a reasonably cost-effective manner, it may recommend the Court appoint a substitute trustee.

## VI. **NOTICE OF PROPOSED DIVESTITURE**

A.     Within two (2) business days following execution of a definitive divestiture agreement, Defendants or the trustee, whichever is then responsible for effecting the divestitures required herein, shall notify the United States of any proposed divestiture required by Section IV or V of this Final Judgment.  If the trustee is responsible, it shall similarly notify Defendants. The notice shall set forth the details of the proposed divestiture and list the name, address, and telephone number of each person not previously identified who offered or expressed an interest in or desire to acquire any ownership interest in the Divestiture Assets, together with full details of the same.

B.     Within fifteen (15) calendar days of receipt by the United States of such notice, the United States may request from Defendants, the proposed Acquirer, any other third party, or the trustee, if applicable, additional information concerning the proposed divestiture, the proposed Acquirer, and any other potential Acquirers.  Defendants and the trustee shall furnish any additional information requested within fifteen (15) calendar days of the receipt of the request, unless the parties shall otherwise agree.

C.     Within thirty (30) calendar days after receipt of the notice or within twenty (20) calendar days after the United States has been provided the additional information requested

from Defendants, the proposed Acquirer, any third party, and the trustee, whichever is later, the

United States shall provide written notice to Defendants and the trustee, if there is one, stating

whether or not it objects to the proposed divestiture.  If the United States provides written notice

that it does not object, the divestiture may be consummated, subject only to Defendants' limited

right to object to the sale under Section V(C) of this Final Judgment.  Absent written notice that

the United States does not object to the proposed Acquirer or upon objection by the United

States, a divestiture proposed under Section IV or Section V shall not be consummated.  Upon

objection by Defendants under Section V(C), a divestiture proposed under Section V shall not be

consummated unless approved by the Court.

## VII. __FINANCING__

Defendants shall not finance all or any part of any purchase made pursuant to Section IV

or V of this Final Judgment.

## VIII. __HOLD SEPARATE__

Until the divestitures required by this Final Judgment has been accomplished, Defendants

shall take all steps necessary to comply with the Hold Separate Stipulation and Order entered by

this Court.  Defendants shall take no action that would jeopardize the divestiture ordered by this

Court.

## IX. __AFFIDAVITS__

A.      Within twenty (20) calendar days of the filing of the Complaint in this matter, and

every thirty (30) calendar days thereafter until the divestiture has been completed under

Section IV or V of this Final Judgment, Defendants shall deliver to the United States an affidavit

as to the fact and manner of their compliance with Section IV or V of this Final Judgment.  Each

such affidavit shall include the name, address, and telephone number of each person who, during

the preceding thirty (30) calendar days, made an offer to acquire, expressed an interest in

acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about

acquiring, any interest in the Divestiture Assets, and shall describe in detail each contact with

any such person during that period.  Each such affidavit shall also include a description of the

efforts Defendants have taken to solicit buyers for and complete the sale of the Divestiture

Assets, including efforts to secure FCC or other regulatory approvals, and to provide required

information to prospective Acquirers, including the limitations, if any, on such information.

Assuming the information set forth in the affidavit is true and complete, any objection by the

United States to information provided by Defendants, including limitations on information, shall

be made within fourteen (14) calendar days of receipt of such affidavit.

B.      Within twenty (20) calendar days of the filing of the Complaint in this matter,

Defendants shall deliver to the United States an affidavit that describes in reasonable detail all

actions Defendants have taken and all steps Defendants have implemented on an ongoing basis

to comply with Section VIII of this Final Judgment.  Defendants shall deliver to the United

States an affidavit describing any changes to the efforts and actions outlined in Defendants'

earlier affidavits filed pursuant to this section within fifteen (15) calendar days after the change

is implemented.

C.      Defendants shall keep all records of all efforts made to preserve and divest the

Divestiture Assets until one year after such divestiture has been completed.

## X. COMPLIANCE INSPECTION

A.      For the purposes of determining or securing compliance with this Final Judgment,

or of any related orders such as any Hold Separate Stipulation and Order, or of determining

whether the Final Judgment should be modified or vacated, and subject to any legally recognized

privilege, from time to time authorized representatives of the United States Department of Justice, including consultants and other persons retained by the United States, shall, upon written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, and on reasonable notice to Defendants, be permitted:

    (1) access during Defendants' office hours to inspect and copy, or at the option of the United States, to require Defendants to provide hard copies or electronic copies of, all books, ledgers, accounts, records, data, and documents in the possession, custody, or control of Defendants, relating to any matters contained in this Final Judgment; and

    (2) to interview, either informally or on the record, Defendants' officers, employees, or agents, who may have their individual counsel present, regarding such matters.  The interviews shall be subject to the reasonable convenience of the interviewee and without restraint or interference by Defendants.

B.    Upon the written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, Defendants shall submit written reports or responses to written interrogatories, under oath if requested, relating to any of the matters contained in this Final Judgment as may be requested.

C.    No information or documents obtained by the means provided in this section shall be divulged by the United States to any person other than an authorized representative of the executive branch of the United States, except in the course of legal proceedings to which the United States is a party (including grand jury proceedings), or for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

D.      If at the time information or documents are furnished by Defendants to the United

States, Defendants represent and identify in writing the material in any such information or

documents to which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal

Rules of Civil Procedure, and Defendants mark each pertinent page of such material, "Subject to

claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure," then the

United States shall give Defendants ten (10) calendar days notice prior to divulging such material

in any legal proceeding (other than a grand jury proceeding).

## XI. <u>NO REACQUISITION AND OTHER PROHIBITED ACTIVITIES</u>

Defendants may not (1) reacquire any part of the Divestiture Assets, (2) acquire any

option to reacquire any part of the Divestiture Assets or to assign the Divestiture Assets to any

other person, (3) enter into any local marketing agreement, joint sales agreement, other

cooperative selling arrangement, or shared services agreement, or conduct other business

negotiations jointly with the Acquirers with respect to the Divestiture Assets, or (4) provide

financing or guarantees of financing with respect to the Divestiture Assets, during the term of

this Final Judgment.  The shared services prohibition does not preclude Defendants from

continuing or entering into agreements in a form customarily used in the industry to (1) share

news helicopters or (2) pool generic video footage that does not include recording a reporter or

other on-air talent, and does not preclude Defendants from entering into any non-sales-related

shared services agreement or transition services agreement that is approved in advance by the

United States in its sole discretion.

## XII. <u>RETENTION OF JURISDICTION</u>

This Court retains jurisdiction to enable any party to this Final Judgment to apply to this

Court at any time for further orders and directions as may be necessary or appropriate to carry

out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

## XIII. <u>EXPIRATION OF FINAL JUDGMENT</u>

Unless this Court grants an extension, this Final Judgment shall expire ten years from the date of its entry.

## XIV. <u>PUBLIC INTEREST DETERMINATION</u>

Entry of this Final Judgment is in the public interest.  The parties have complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C § 16, including making copies available to the public of this Final Judgment, the Competitive Impact Statement, and any comments thereon, and the United States' responses to comments.  Based upon the record before the Court, which includes the Competitive Impact Statement and any comments and response to comments filed with the Court, entry of this Final Judgment is in the public interest.

Date: _____

Court approval subject to procedures of Antitrust
Procedures and Penalties Act, 15 U.S.C. § 16

_____

United States District Judge